## YOUNG *v.* PULASKI COUNTY.

### Opinion delivered February 11, 1905.

CORONER—AUTHORITY TO HOLD INQUEST.—Where a person was killed in one county under circumstances indicating that he had been foully dealt with, and his body was subsequently removed to another county for interment, the coroner of the latter county had no authority to hold an inquest.

JOSEPH W. MARTIN, Judge.

Affirmed.

*W. C. Adamson*, for appellant.

The coroner of St. Francis County could not hold an inquest in Pulaski County. 7 Cyc. 605; Sand. & H. Dig. § 754. The inquest was properly held by the appellant in Pulaski County. 64 Ind. 524; 86 Ind. 154; 43 Hun, 38; 56 N. E. 1028; 65 Ark. 557.

HILL, C. J. This case involves "crowner's quest law." The coroner of Pulaski County held inquests over the bodies of two residents of Pulaski County who had been killed in a railroad wreck in St. Francis County. Their bodies had been shipped to their homes for burial, and while in an undertaking establishment where they were being prepared for burial, the coroner of Pulaski County received information that a man was under arrest in St. Francis County, charged with having intentionally caused the wreck in which these parties were killed. He immediately summoned a jury, and held inquests, and this appeal is from a judgment disallowing his fees therefor.

Originally, in England, the office of coroner was one of great dignity and authority, and coroner's juries had the power, like grand juries, to present indictments for murder. The power and authority of the coroner from usage and statute have been much curtailed, and his authority for holding an inquest is found in section 794, Kirby's Digest. Two instances occur in which it is his duty to hold inquests:

(1.) If the dead body of any person be found, and the circumstances of his death be unknown; and (2), if any person die, and the circumstances of his death indicate that he has been foully dealt with. *Jefferson County* v. *Cook*, 65 Ark. 557.

In the first instance, it would not matter where the crime occurred, as the finding of the body and the circumstances of the death being unknown would give the coroner jurisdiction to start an inquiry into the cause of death. The appellant does

not claim under that clause, but under the second, where information has been given indicating that the death was produced through foul means. This would undoubtedly have justified the coroner of St. Francis County in holding an inquest, and in fact would have made it his duty to do so. "The object of an inquest is to seek information, and to obtain and secure evidence in case of death by violence, or other undue means." *Clark County* v. *Calloway*, 52 Ark. 361. The object of the performance of these duties by the coroner is "to prevent the escape of the guilty." *Jefferson County* v. *Cook*, 65 Ark. 557. Keeping these objects and purposes in view, it is clear that they all apply to the duties of the coroner at the place the crime was committed (or the body found), and not at the place where the body may be sent for interment.

Lord Denman, speaking as Chief Justice of the Court of Common Pleas, said: "The mere fact of a body lying dead does not give the coroner jurisdiction, nor even the circumstance that the death was sudden; there ought to be a reasonable suspicion that the party came to his death by violent or unnatural means (citing authorities). The coroner must therefore, before he summons a jury, make some inquiry; and, if on that inquiry he finds that the circumstances which occasioned the death happened out of his jurisdiction, and that there is no reasonable suspicion of murder or manslaughter, he ought to abstain from summoning a jury. If, however, the coroner has reason to suspect murder or manslaughter to have been committed, or if it does not appear on inquiry by him that the circumstances occurred out of his jurisdiction, he is bound to summon a jury." *Queen* v. *Great Western Ry. Company*, 43 E. C. L. Rep. 759. Under the old system, where the coroner's jury performed the functions of a grand jury, this might require the removal of the body back to the jurisdiction where the crime was committed; but under the system in this State the inquest is to speedily inquire into the cause of death for the purpose of apprehending the guilty parties, and the testimony then taken to be an aid to the grand jury.

The whole object of the statutes is attained when the coroner of the county where the crime is committed or the body

is found holds the inquest, and no other coroner has jurisdiction, and no useful purpose would be secured in giving him jurisdiction.

The judgment is affirmed.